## CURTIS *et al.* *v.* HART.

*(Supreme Court, General Term, Fifth Department. October, 1888.)*

APPEAL—REVIEW—WEIGHT OF EVIDENCE.

Where the credibility of most of the witnesses sworn on the trial was attacked, some of them being contradicted in material matters by other witnesses, and others by the circumstances under which they claimed to have acquired their information, this court, on appeal, will not attempt to readjust the facts from the evidence on the record, the trial court being in such case the best judge of the credit to be given to the various witnesses.

Appeal from special term, Steuben county.

An appeal from a judgment in a foreclosure action brought by Susan Curtis and others, as executors of William Curtis, deceased. The mortgage was given to secure an indebtedness of $5,000 arising out of a loan of that sum of money by William Curtis to the defendant, Moses Hart, the mortgagor, on the 28th day of April, 1882. The only defense was the plea of usury. The answer alleges that at the time of the making of the loan Curtis made it a condition that he should be paid the sum of $300 as a bonus, and that the same was paid to and received by him in consummation of the agreement. The referee found as a fact that Curtis did not agree to receive, nor did he receive, any sum of money whatever in excess of the legal rate of interest. From a judgment entered in accordance with the referee's findings defendant appeals.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*W. A. Sutherland*, for appellant. *John F. Little*, for respondents.

BARKER, P. J.    This court is asked by the appellant to reverse the decision of the referee, on the ground that it is against the weight of evidence on the question of usury.    It is therefore our duty to examine all the evidence, and judge for ourselves whether it has sufficient probative force to uphold his conclusions.    If it has, then it is not a case calling for or permitting of our interference under the well-established rules of this court, which are to be observed in reviewing judgments rendered by the trial court.    The affirmative of the only issue presented by the pleadings was with the mortgagor, and, while the defense of usury is to be regarded like any other legal defense, and not in any sense to be regarded with disfavor, as unconscionable, yet, as the penalty which the law imposes on the lender of money, if he exacts unlawful interest from the borrower, is so heavy, it is but fair to require the party setting up such defense to maintain it by proofs which are reliable and convincing, so that the judicial mind, after carefully considering all the evidence, has an abiding conviction that the usury laws have been violated, as set forth in the pleadings. In the case now before us the evidence was in the proper sense of the term conflicting, and the chief witness produced by the defendant, and on whose evidence he mainly relied to establish the defense, was a brother of the wife of the borrower, and he was contradicted by other witnesses in important and material parts of his evidence; and, as appears by the record, he interested himself in the defense, and before the trial interviewed the witnesses called to the stand by the defendant in support of his evidence.    In addition to these circumstances, which properly subject his testimony to a close and careful scrutiny, at least two witnesses testified that his character for truth and veracity was bad in the community where he resided, and other witnesses testified that his character for integrity was the subject of conversation and criticism among his acquaintances,

In view of the facts and circumstances, as they are claimed to be by the defendant, unless full confidence is given to the evidence of David E. Mosley, the witness referred to, the defense must fail, as being unsupported by satisfactory proof.    In the negotiations which resulted in the making of the loan Mosley represented Mr. Hart, the borrower, and Mr. Dunham represented the lender, Mr. Curtis.    The usurious bargain, as set up in the answer, and testified to by Mosley, was that, pending the negotiations, Curtis demanded as a condition of making the loan that he should be paid a bonus of $300 in excess of the legal rate of interest, which Mosley, as the agent of Hart, agreed to pay, and did personally pay to Curtis out of the same moneys which he paid to Hart on consummating the loan.    The bond and mortgage are dated on the 27th day of April, 1882, and were recorded in the Steuben county clerk's office the next day.    On the last-named day a portion of the loan was paid to Mosley, as Hart's agent, at the business office of Darling.    Two of the plaintiffs' witnesses who were present on that occasion testified that $3,900 was then paid, and a voucher taken therefor, and the balance of the moneys loaned, $1,100, was left in the hands of Mr. Dunham, to be used by him in paying off a prior mortgage, and was in fact subsequently used by him for that purpose. The defendant contends, and Mosley so testified, that on that day the sum of $2,800 only was paid to him, and that Curtis requested a delay of a few days before making payment of the balance, as his money was then in a savings bank, and if he drew it out at that time he would lose the interest on his deposit, and that he consented to the delay, and the balance was paid to him some time afterwards, and of that sum $1,100 was left with Dunham to pay off the prior mortgage.    The disagreement between the plaintiffs' and the defendant's witnesses as to the time and manner of payment becomes material, for the reason that it is claimed by the defendant, and Mosley so testified, that, after the balance was paid to him, he made an arrangement for Hart and Curtis to meet him at his office, and then for the first time informed Hart that he had agreed to pay Curtis a bonus of $300, and did then pay it to him, out of

the moneys in his hands, with the consent of Hart, and in the presence of the witnesses Simons and Cashman, who testified in substance that they were present in Mosley's office some time in the month of May or June, in the year 1882, and there met Hart and Curtis, and saw Mosley pay to Curtis the sum of $300, and heard the conversation which then took place between those parties. Mosley swore falsely that the sum of $2,800 only was paid to him on the 28th day of May at Dunham's office, and that the balance was paid by Curtis afterwards, and just before the alleged interview in his office, when it is claimed that Simons and Cashman were present. His motive and purpose in doing so are apparent, and there is good reason for believing that the defense was wholly fabricated. If Curtis in fact paid over the entire loan in currency on the 28th, as the plaintiffs' witnesses testified, no reason has been nor can be assigned by the defendant why Curtis and Hart should meet by appointment in Mosley's office for the purpose of consummating the transaction, as testified to by Mosley. The necessity for completing the loan before the 28th of April was pressing, for Hart's farm was advertised to be sold that day, in foreclosure proceedings, and on the day previous the bond and mortgage was prepared and acknowleged, and a messenger sent on the evening of that day to leave the same in the county clerk's office in Bath, that it might be recorded early the next morning, as Mr. Curtis had refused to pay over the money until the mortgage was recorded and the search brought down to the time of the record of that instrument. The plaintiffs' witnesses Brooks and Dunham both testified that Curtis, on the morning of the 28th, came to Mr. Dunham's business office and there met Mr. Mosley, and laid down on the counter $5,000 in bank bills, and the same was on that day all paid to Mosley, and he took possession of and carried away the entire sum, except $1,100, which was left in the hands of Dunham to pay off and discharge a prior mortgage. At that time a writing was prepared, dated on the 28th, signed by Hart, which the plaintiff produced and read on the trial, in which the receipt of the payment of the sum of $3,900 on the loan is acknowledged, and it is also stated therein that Curtis was to retain $1,100 to pay off the prior mortgage, and the concluding words of the instrument are as follows: "The said last-named mortgage is to be paid off as soon as practicable, and the balance remaining of said $1,100, if any, after satisfying said Francis mortgage, is to be returned to the said Moses Hart." Brooks and Dunham both testified that the paper was read over to Mosley, and that he took it into his possession, and procured Hart's signature thereto, and returned it to them. Mosley testified that he did not read the paper, and that Hart did not when he signed it. This paper, standing alone, is an item of evidence strongly indicating that the entire transaction was closed on the 28th, except the payment of the prior mortgage, which it is admitted that Dunham did pay to Francis, the holder.

There is another significant circumstance which may be noticed, and which tends to give credit to the statements made by the plaintiffs' witnesses, and it is the omission on the part of Mosley to make any mention in his evidence of the time and place when he received the balance of the money from Mr. Curtis, or by whom the same was paid. It cannot be disputed but that from the evidence, as it appears in the record, there is room for believing that Mosley did not tell the truth, and that Brooks and Dunham did, relative to the matters wherein they dispute each other. The defendant sought to corroborate Mosley's evidence by the testimony of witnesses, who stated that they were present at Mosley's office, and heard the conversation between him and Curtis, which the defendant claims related to this transaction. The interview when the witness Levin was present took place before Curtis had consented to make the loan, and it cannot be claimed that at that time a corrupt and usurious bargain was concluded between Mosley and Curtis. The interview claimed to have taken place in the presence of Simons and Cashman was some time after the 28th, in the month of May or June following,

according to the statements of both of those witnesses. They testified in substance that Mosley stated to Mr. Hart that he had agreed to pay Curtis $300 for making the loan, and that Hart protested, and said, if he had known that such was the understanding, that he would not have executed the papers, but that he finally assented to the arrangement, and that Mosley then paid over to Curtis $300 in currency, and the parties separated. It is a singular circumstance that, in a transaction of this importance, Mosley is corroborated only by the evidence of witnesses who were strangers to Curtis, and who took no part, and were not interested in the least in the transaction. If it be conceded that Curtis was in Mosley's office upon the occasions mentioned, then the evidence of the witnesses who testified as to what then and there transpired should be subjected to the most careful scrutiny, for the purpose of determining whether they, who were incidentally present, and hearing the conversation between others, in which they took no part, and were not interested in, were able after the period of five years to relate the same with such accuracy as to make it safe and proper for the court to determine a disputed question of fact upon their evidence. As to the language used by Curtis, Mosley, and Hart during that interview, Simons and Cashman do not agree, and Mosley, in narrating what then occurred, does not agree with either Simons or Cashman, while Simons and Cashman repeat the expressions which they say were used by Curtis. Mosley, in his narration, omits to mention that Curtis uttered a word during the whole interview, but they do all agree in the statement that the sum of $300 was paid by Mosley to Curtis. The trial court was the best judge as to which of the witnesses were to be believed in matters where they made contradictory statements, judging from their appearance, intelligence, and deportment on the stand. To justify this court, in any case, in reversing the decision of a trial judge, or of a referee, it must be made to appear that his conclusions were manifestly against or contrary to the evidence. The credibility of most of the witnesses sworn on this trial was called in question, some of them being contradicted in material matters by the testimony of other witnesses, and the others by the circumstances under which they stated they gained some knowledge relative to the question in dispute. In such a case this court is not called upon, nor should it attempt, to readjust the facts from the evidence as it appears on the record. The parties must be content with the decision rendered by the trial court judge. We may add, however, that, after a careful study of the evidence, we have received no impression upon the question of fact in issue different from those entertained by the learned trial judge, as expressed in his decision. Judgment affirmed, with costs. All concur.